## STATE, Respondent, v. BURLINGAME, Appellant.

### (198 N. W. 824.)

(File No. 5352.   Opinion filed May 15, 1924.)

1.   Criminal Law—Evidence—Witnesses—Hypothetical Questions Assuming Facts Not in Evidence Held Improperly Allowed.

Hypothetical questions asked a physician, which assumed facts concerning the effects of medicine taken by prosecutrix, not in evidence, held improperly allowed.

2.. Criminal Law—Evidence—Expert Testimony—Hypothetical Questions Must Be Based upon Facts Proven or Indicated by Evidence.

Hypothetical questions must be based upon facts which are proved or which the evidence tends to prove.

3. Abortion—Verdict—Evidence Held Insufficient to Sustain Conviction for Procuring Miscarriage.

Evidence held insufficient to sustain conviction for procuring miscarriage.

4. Criminal Law — Accomplices — Prosecutrix Not Accomplice in Crime of Procuring Miscarriage.

The prosecutrix upon whom an unlawful operation producing a miscarriage has been performed is not an accomplice in the crime.

Appeal from Circuit Court, Codington County; HON. W. N. SKINNER, Judge.

R. M. Burlingame was convicted of procuring a miscarriage, and he appeals from judgment and order denying new trial. Order and judgment reversed, and cause remanded.

*Case & Case,* of Watertown, for Appellant.

*Buell F. Jones,* Attorney General, and *Benj. D. Mintener,* Assistant Attorney General, for Respondent.

(1) To point one of the opinion, Appellant cited: State v. Swenson, 129 N. W. 119; State v. Boetz, 131 N. W. 514; Kersten v. G. N. Ry. Co., 147 N. W. 787.

(4) To point four, Appellant cited: Wharton Cr. Evidence, Sec. 440; Jones on Evidence, 786; Clapp v. State, 30 S. W. 214; People v. Bolander (Cal.), 11 Pac. 799; State v. Light (Ore.), 21 Pac. 132; State v. Roberts, 13 Pac. 896; Wandell v. State, 25, S. W. 127, 1 C. J. Sec. 20; 98 A. S. R. 158; Wells v. New England Mutual Life Ins. Co., 43 Atl. 126; Rev Code 1919,. Secs. 3594, 3595, 4737.

Respondent cited: State v. McGaughey (S. D.), 187 N. W. 717; State v. Phillips, 18 S. D. 1; 16 C. J. 683; State v. Mosher (S. D.), 192 N. W. 756; 1 R. C. L. 87; State v. Mosher (S. D.), 192 N. W. 756; Hammett v. State (Tex.), 209 S. W. 661; Willingham v. State, 33 Tex. Cr. Rep. 98; Miller v. State, 37 Tex. Cr. Rep. 575; Hunter v. State, 38 Tex. Cr. Rep. 61, 41 S. W. 602; Gray v. State, 77 Tex. Cr. Rep. 221, 178 N. W. 334; Thomson v. U. S., 30 App. Cases 352, 12 Am. & Eng. Ann. Cas. 1004.

DILLON, J.   Appellant asserts error in allowing leading questions.   It is clear that the rule has been violated in this respect.   The respondent justifies the ruling as being discretionary. These matters were within the discretion of the trial court, and we cannot say that the trial court abused that discretion in permitting leading questions.

[1]   It is claimed that the court erred in allowing the testimony of Dr. W. G. Magee:

Q.   Assuming that the mother had taken certain capsules or pills once every four hours for a period of two weeks after taking the last capsule, and that the woman had felt absolutely no effects from the medicine and had been in perfect health, would you say that the fœtus could have been killed as the result of the medicine?   A.   I would answer, no.

It was not possible that the answer to this question could furnish any basis for an expert opinion without the knowledge of the medicine taken.   The medicine was taken for the express purpose of bringing about a miscarriage.   The purpose of this testimony was an inference that the fœtus had only been dead a very short time before its expulsion; the improbability of the fœtus being expelled by the act of the mother unassisted, and that the approximate cause of the expulsion was the act of the defendant with an instrument and not of the medicine.

Q.   Can there be, in your opinion, sufficient contraction of the uterus to cause the death of the child without its expulsion at the time without the mother feeling the contraction?   A.   If the medicine produces contractions until it will produce what the woman ordinarily terms as cramps in the lower part of the abdomen, without these cramps there is no action of the medicine.

This question evidently was intended to cover the mother's feelings caused by the contraction.   We fail to find any evidence in the record bearing on her feeling relative to the contraction theory.

The prosecutrix told defendant that she had taken the medicine and had "done other things" to bring about a miscarriage. She did not testify that she felt absolutely no effects from the taking of the medicine.   We think the court erred in permitting answers to these questions.   It is well known that hemorrhage alone is a producing cause of miscarriage.   Hemorrhage was not

mentioned in any of these questions nor in the testimony of the prosecutrix. The admission of this testimony constituted prejudicial error in pushing the inquiry into the realm of conjecture and guessing.

It further appears from the testimony of Dr. Magee that he did not find anything from a medical standpoint to indicate whether the miscarriage was caused from an instrument or from the use of medicine. Dr. Magee testified:

"It would not be possible from the examination to tell strictly, from that examination, the cause of abortion. There is some medicine that will cause contraction of the womb so as to loosen the after-birth inside the womb, that will cause the death of the child and afterwards expel the same as if the child had died from any other cause. Falling, slipping, and accidents may produce miscarriage. The desire of a woman coupled with the taking of medicine might cause the death of the child and then, later, its expulsion."

[2] In the case of State v. Swenson, 26 S. D. 589, 129 N. W. 119, this court said:

"Hypothetical questions must be based upon facts proved or which the evidence tend to prove."

In the case of State v. Goetz, 21 N. D. 569, 131 N. W. 514, the court said:

"Hypothetical questions are properly excluded where there is no evidence upon which to base the expert testimony offered."

In the case of Kersten v. G. N. Ry. Co., 28 N. D. 3, 147 N. W. 787, the court said:

"Hypothetical questions put to medical expert as to the cause of the condition of plaintiff, injured while a passenger, is properly excluded where it assumes a state of facts not in evidence."

"The facts on which an expert opinion is based must permit of reasonably certain deductions as distinguished from mere guesses or conjectures." 11 R. C. L. 611.

"Nor should expert medical opinion be allowed to extend to the field of baseless conjecture concerning matters not susceptible of reasonably accurate conclusions." 11 R. C. L. 613.

[3] It is claimed by appellant that the evidence is insufficient to justify the verdict. The physicians who testified on behalf of the state admit that there is a large percentage of mis-

carriages, even with women of perfect health and when no definite reason can be assigned. One of the physicians stated that possibly 20 per cent of the pregnancies result in miscarriage. The state should prove that the miscarriage was brought about through the use of an instrument and not otherwise. The gist of the offense is the use of an instrument in causing the miscarriage. The miscarriage constitutes no proof of the use of an instrument. It is clear from the testimony of the doctors who examined the fœtus that they failed to find any marks indicating that an instrument had been used, and, on examining the prosecutrix, nothing was found to indicate the use of an instrument. So far as the use of the instrument is concerned, the conviction rests upon the testimony alone of the prosecutrix, whose contradictory and uncertain testimony fails to sustain the charge contained in the information.

The prosecutrix testified positively that she did not know what defendant used in performing this operation or whether he merely made an examination—

Q. Do you know as to what he used to perform the operation? A. No, I do not know what he used.

Q. Did something you don't know what it was? A. No, sir.

Q. Did he use any instrument? A. Did not see any, I don't know what he done, whether he performed an operation or merely made an examination.

The physicians admitted that a miscarriage was a possibility from the use of medicine.

The prosecutrix swears that she paid the doctor $50. The doctor produced his day-book, from which it appears that the amount of the charge was $2. The defendant testified that "she did not pay him $50, but paid him $2. He made a memorandum of that charge in his call book."

The prosecutrix testifies to a second visit when she was instructed not to call him in case of a miscarriage. We find no facts tending to establish any other call except the one on the 13th. Gertrude, the sister, does not pretend that the doctor was visited at any other time. We think it is extremely doubtful that any further visit to defendant's office ever took place.

The following is a short resume of defendant's testimony:

"When the prosecutrix came to my office on July 13th, she

gave me her name as Edith Johnson; said that she was pregnant; she had been taking medicine and 'doing other things' in order to bring about a miscarriage. She asked for an examination as to her condition. I made a bi-manual examination with the first two fingers of the right hand in the vagina and the left on the abdomen. I found the uterus had been enlarged and indicated probably five months' pregnance with a slight dilation of the cervix and in withdrawing the fingers part way out, there were streaks of bloody mucus on my fingers, which indicated a probability of a miscarriage. I stated to her that the indications were that she would miscarry. I did not use any instrument on her. She was not back there at any other time. I did not use any instrument whatever or use any means of methods whatever for the purpose of bringing about a miscarriage. She did not pay me $50. She paid me $2. I keep a regular call book (which the witness produced) showing all cases."

The entries were made in the usual course of business.

The prosecutrix could not tell when the pregnancy took place—

"Don't remember it at all. I don't know where it took place. I cannot state the place. I had been spending my time at White Rock. I then went to Wheaton, Minn. Consulted physicians at Fairmont, Browns Valley, and Watertown. Had an examination at all these places and took medicine from a doctor at Browns Valley. He gave me a box of pills. I took the pills for the purpose of bringing about a miscarriage. I consulted a doctor and told him what I wanted them for and took them for that purpose."

A year before she had a miscarriage as a result of an operation.

[4] Appellant strenuously insists that Gertrude and Ada Gullickson, within the meaning of the law, are accomplices, and hence the offense must be proven by other direct evidence; while the respondent contends that the crime of the accused involved an operation on the body of the prosecutrix and that the accomplice rule had no application to the facts in this case. We think the respondent's contention is the better line to follow. She does not, by consenting to the unlawful operation, become an accomplice in the crime. She should be regarded as the victim of the crime,

rather than a participant in it. Thompson v. U. S., 30 App. (D. C.) 352, 12 Ann. Cas. 1004.

The prosecutrix testifies positively in three or four places that she did not know what the doctor used; saw no instrument. The instrument theory is injected into the case largely by the leading questions of the prosecutor.

In State c. Korth, 39 S. D. 365, 164 N. W. 93, this court reversed the trial court decause:

"The evidence was insufficient to connect the appellant with the commission of the offense charged." The proof "was uncertain, weak, and unsatisfactory to such an extent that it should not be held sufficient to produce an abiding conviction of guilt, beyond all reasonable doubt, of such * * * offense."

When prosecutrix was asked about her knowledge of the operation, she freely admitted that she "did not know." It was the mere opinion or guess of the witness which could not furnish the character of the testimony required.

We conclude that the evidence was wholly insufficient to warrant the conclusion that an instrument was used. It follows that the court erred in denying defendant's motion for a new trial and entering judgment of conviction.

The order and judgment are reversed, and the cause remanded for a new trial.

GATES, J., concurs in result.

Note.—Reported in 198 N. W. 824. See, Headnote (1), American Key-Numbered Digest, Criminal law, Key-No. 485(1), 16 C. J. Sec. 1553; (2) Criminal law, Key-No. 485(1), 16 C. J. Sec. 1553; (3) Abortion, Key-No. 11, 1 C. J. Sec. 105; (4) Criminal law, Key-No. 507(1), 1 R. C. L. 131, 16 C. J. Sec. 1372, Abortion, 1 C. J. Sec. 19.

On criminal responsibility of one other than subject or actual perpetrator of abortion, see note in 4 A. L. R. 351.